# UNITED STATES DISTRICT COURT

## OF THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARROL COWAN, ) <br> LEONARD LORENZO, and ) <br> RUSSELL DENNIS individually and ) <br> on behalf of all others similarly situated, ) <br> Plaintiffs, ) <br> ) <br> ) <br> ) <br> v. ) <br> ) <br> ) <br> ) <br> ) <br> INTEL CORPORATION, a Delaware ) <br> Corporation, and DOES 1-100, ) <br> ) <br> Defendant. ) <br> ) <br> ) | Case No. <br><br><br><br><br><br><br><br> **CLASS ACTION** <br><br> **DEMAND FOR JURY TRIAL** |

Carrol Cowan, Leonard Lorenzo, and Russell Dennis ("Plaintiffs"), by their attorneys,

individually and on behalf of all others similarly situated, upon personal knowledge as to

themselves, and as to all other matters upon information and belief based on, *inter alia*, the

investigation made by their attorneys, which included among other things, a review of publicly

available information, of the complaint filed by Advanced Micro Devices, Inc. ("AMD") in the

United States District Court, District of Delaware, styled *AMD v. Intel Corporation, et al.*, of the

investigation and recommendation of the Japanese Fair Trade Commission ("JFTC") concerning

the practices of Intel Corporation's Japanese subsidiary,[1] and of news reports of the investigation

---

[1] Japanese Fair Trade Commission, *The JFTC Rendered a Recommendation to Intel K.K.,* (March 8, 2005)
<http://www.jftc.go.jp/e-page/pressreleases/index05.html> is attached as Exhibit A.

by the antitrust department of the European Union into Intel Corporation's business practices in Europe, allege as follows:

## NATURE OF THE ACTION

1.  This action arises from the anticompetitive and monopolistic practices engaged in by Defendant Intel Corporation ("Intel") in the trade or commerce of microprocessors. Specifically, Intel intended to, did, and continues to prevent and destroy competition, acquire and/or maintain monopoly power, and raise and/or maintain prices of x86 Microprocessors to supra-competitive levels in the United States and worldwide by engaging in unlawful business practices, including:

    1.  Coercing strategic customers into exclusive or virtually exclusive agreements to purchase Intel microprocessors;

    2.  Threatening strategic customers with the loss of rebates, allowances and market development funding if they did not limit or abandon purchases of competitor products, such as the microprocessors developed by Advanced Micro Devices, Inc.;

    3.  Instituting a retroactive rebate program to induce customers to purchase elevated levels of Intel microprocessors to the exclusion of competing products manufactured by AMD or others; and

    4.  Establishing and strictly enforcing quotas with retailers, requiring them to purchase unnecessarily high numbers of Intel microprocessor based PC platforms to the exclusion or near exclusion of competing platforms based on AMD or other microprocessors.

2.  Since the mid-1970s, Defendant Intel has dominated and monopolized the x86 Microprocessor market worldwide.

3.    Since 1997, Intel's x86 Microprocessor market share of worldwide sales of PCs has exceeded 80%.[2] Intel engaged, and continues to engage, in a series of predatory acts designed to eliminate competition in, and prevent entry into the x86 Microprocessor market, exclude competitors from gaining significant market share, and maintain its monopoly position. Competitors such as AMD, offering technically superior products and/or lower prices, were and are not able to gain sufficient market penetration because of Intel's unlawful conduct. This behavior has enabled Intel to avoid any significant competition in the x86 Microprocessor market.

4.    Intel has used exclusionary practices to maintain its monopoly power, which has resulted in injury to consumers, primarily in the form of supra-competitive prices for microprocessors, which, in turn, raises the prices of PCs purchased by consumers to levels over what PCs would have been cost absent Intel's unlawful conduct, and secondarily in the form of reduced consumer choice.

5.    Plaintiffs, on their own behalf and on behalf of the Class defined below, bring this action for civil damages and injunctive relief. Plaintiffs demand a jury trial.

### DEFINITIONS

6.    The term "PC" refers to all computers for home or business use.

7.    The term "microprocessor" refers to the central processing unit of a PC.

8.    The term "x86 Microprocessor" refers to microprocessors that run the Microsoft Windows and Linux families of operating systems.

9.    The term "Intel Compatible PC" refers to a PC designed to function with Defendant Intel's x86 Microprocessors. Intel's x86 Microprocessor products include a family of devices that have been marketed and sold under the trade names 8086, 80186, 80286, 80386, Pentium, Pentium with MMX, Pentium Pro, Pentium II, III and IV, and Celeron.

---

[2] The lone exception was in 2001 when Intel's market share was 78.7%. The following year it bounced back to approximately 83.6%.

10.    The term "AMD Compatible PC" refers to a PC designed to function with AMD's microprocessors. AMD's x86 Microprocessor products include a family of devices that have been marketed and sold under the trade names Athlon, Athlon 64, Athlon XP, Duron, Sempron, Turion, and Opteron.

11.    The term "OEM" refers to original equipment manufacturers such as Dell, Hewlett-Packard, International Business Machines, Sony, Fujitsu/Fujitsu Siemens, Toshiba, Acer and NEC.

12.    The term "Distributor(s)" refers to a company that markets or sells microprocessors.

13.    The term "Retailer(s)" refers to a company that buys PCs in large quantities from OEMs or Distributors, and then sells individual PCs to consumers. Examples of Retailers include Circuit City and Best Buy.

## JURISDICTION AND VENUE

14.    This Complaint is filed, and these proceedings are instituted, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26 , to obtain injunctive relief for violations of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, to recover damages under state antitrust and consumer protection laws, and to recover the costs of suit, including reasonable attorneys' fees, for the injuries that Plaintiffs and all others similarly situated sustained as a result of the Defendant's violations of those laws.

15.    This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1337. The Court has supplemental jurisdiction over the pendent state law claims under 28 U.S.C. § 1367. The Court also has diversity jurisdiction over this class action pursuant to the Class Action Fairness Act of 2005, which, *inter alia*, amends 28 U.S.C. § 1332 to add a new subsection (d) conferring federal jurisdiction over class actions where, as here, any member of a class of plaintiffs is a citizen of a State different from any defendant and the aggregated amount

in controversy exceeds five million dollars ($5,000,000.00), exclusive of interests and costs. 28 U.S.C. §§ 1332(d)(2) and (6).

16. Venue is proper in this District under 15 U.S.C. § 22 and 28 U.S.C. § 1391 because Defendant Intel is incorporated in this District.

17. The activities of Defendant Intel and its co-conspirators, as described herein, are within the flow of, are intended to, and have a substantial effect on the interstate commerce of the United States.

18. Jurisdiction of this Court for the pendent claims is authorized by Fed. R. Civ. P. 18(a).

## PARTIES

### A. Plaintiffs

19. Plaintiff Carrol Cowan is a resident of the District of Columbia. During the Class Period, Plaintiff Cowan purchased an Intel Compatible PC in the District of Columbia manufactured by Dell, Inc., for her own personal use and not for resale, and has been injured by Defendant and its co-conspirators' conduct, as alleged herein.

20. Plaintiff Leonard Lorenzo is a resident of Hillsborough County in the State of Florida. During the Class Period, Plaintiff Lorenzo purchased an Intel Compatible PC in Florida manufactured by Sony Electronics, Inc., for his own personal use and not for resale, and has been injured by Defendant and its co-conspirators' conduct, as alleged herein.

21. Plaintiff Russell Dennis is a resident of Chittenden County in the State of Vermont. During the Class Period, Plaintiff Dennis purchased an Intel Compatible PC in Vermont manufactured by Dell, Inc., for his own personal use and not for resale, and has been injured by Defendant's and its co-conspirators' conduct, as alleged herein.

### B. Defendant

22. Intel Corporation is a corporation organized, existing, and doing business under and by virtue of the laws of the State of Delaware, with its office and principal place of business located at 2200 Mission College Boulevard, Santa Clara, California 95052.

### C.    Unnamed Co-Conspirators

23.    Certain PC OEMs, Distributors and Retailers not named as defendants in this

Complaint have participated as co-conspirators in the alleged violations, and have performed acts

and made statements in furtherance of the violations. Various other persons, firms, and

corporations, the identities of which are presently unknowns have participated as co-conspirators

with Defendant Intel in the violations alleged herein and have performed acts and made

statements in furtherance thereof.

### CLASS ACTION ALLEGATIONS

24.    Plaintiffs bring this action on behalf of themselves and all others similarly

situated, pursuant to Fed. R. Civ. P. 23(b)(2) and (3). Plaintiffs seek to represent the following

Class:

> All persons, sole proprietorships, partnerships, corporations and other entities
> who purchased x86 Microprocessors or Intel Compatible PCs for their own use,
> and not for resale, at any time during the period of January 1, 1997 up to and
> including the date of trial. Excluded from the Class are the following: any
> judge, justice, or judicial officer presiding over this matter and the members of
> his or her immediate family; and Defendant and its co-conspirators, along with
> their respective parents, subsidiaries and/or affiliates. Also excluded from this
> Class are the legal representatives, heirs, successors and attorneys of any
> excluded person or entity, and any person acting on behalf of any excluded
> person or entity.

23.    Plaintiffs also seeks to represent the following subclasses:

1.    District of Columbia subclass:

> All persons, sole proprietorships, partnerships, corporations and
> other entities who purchased x86 Microprocessors or Intel
> Compatible PCs in the District of Columbia for their own use, and
> not for resale, at any time during the period of January 1, 1997 up
> to and including the date of trial.

2.    Florida subclass:

> All persons, sole proprietorships, partnerships, corporations and
> other entities who purchased x86 Microprocessors or Intel
> Compatible PCs in Florida for their own use, and not for resale, at

any time during the period of January 1, 1997 up to and including the date of trial.

3.    Vermont subclass:

All persons, sole proprietorships, partnerships, corporations and other entities who purchased x86 Microprocessors or Intel Compatible PCs in Vermont for their own use, and not for resale, at any time during the period of January 1, 1997 up to and including the date of trial.

4.    Separate subclasses for each other indirect purchaser state:

All persons, sole proprietorships, partnerships, corporations and other entities who purchased x86 Microprocessors or Intel Compatible PCs in each other state that allows recovery for indirect purchasers at the time of trial and who purchased for their own use, and not for resale, at any time during the period of January 1, 1997 up to and including the date of trial.

24.  All Class members are hereinafter referred to as the "Class." Subject to additional information obtained through further investigation and discovery, the foregoing definition of the Class may be expanded or narrowed by amending the Complaint.

25.  This action has been brought and may properly be maintained as a Class action, pursuant to the provisions of the Rule 23 of the Federal Rules of Civil Procedure.

a.    Numerosity – Fed. R. Civ. P. Rule 23(a)(1): Members of the Class are so numerous that their individual joinder is impracticable. Plaintiffs are informed and believe, and on that basis alleges, that the proposed Class contains millions of members. The precise number of Class members is unknown to Plaintiffs. The true number of Class members is likely to be known by Defendant, and thus, such Class members may be notified of the pendency of this action by published notice or other alternative means.

b.    Existence and Predominance of Common Questions of Law and Fact – Fed. R. Civ. P. Rule 23(a)(2): Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions

affecting individual Class members. These common legal and factual questions include:

(i)    Whether Defendant's anticompetitive and monopolistic conduct violated the Sherman Act;

(ii)   Whether Defendant's anticompetitive and monopolistic conduct violated D.C. Code, §28-4501, *et seq.* the District of Columbia Antitrust Act;

(iii)  Whether Defendant's unfair and deceptive practices violated D.C. Code, §28-3901, *et seq.*, the District of Columbia Consumer Protection Procedures Act ("CPPA");

(iv)   Whether Defendant's anticompetitive and monopolistic conduct violated Fl. Stat., §542.15, *et seq.* the Florida Antitrust Act;

(v)    Whether Defendant's unfair and deceptive practices violated Fl. Stat., §501.201, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA");

(vi)   Whether Defendant's anticompetitive and monopolistic conduct violated Vt. Stat. Ann. Tit. 9, §2451-2480g, the Vermont Consumer Fraud Act;

(vii)  Whether Defendant's unfair and deceptive practices violated Vt. Stat. Ann. Tit. 9, §2451-2480g, the Vermont Consumer Fraud Act;

(viii) Whether Defendant's anticompetitive and monopolistic conduct violated  other state antitrust, unfair competition, or consumer protection laws that permit damage actions by indirect purchasers, including but not limited to: Alabama, Alaska, Arkansas, Arizona, California, Idaho, Iowa,

8

Kansas, Maine, Michigan, Minnesota, Mississippi, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, South Dakota, Tennessee, Utah, West Virginia, Wisconsin;

(ix)     Whether Defendant possesses monopoly power in the relevant market;

(x)      Whether Defendant's conduct caused injury to the Class by increasing, maintaining or stabilizing the prices of x86 Microprocessors and of Intel Compatible PCs above competitive levels;

(xi)     Whether Defendant acquired or maintained monopoly power within the relevant market by unlawful and/or anticompetitive conduct;

(xii)    Whether Defendant's conduct caused injury to the business or property of Plaintiffs and the members of the Class and, if so, the appropriate class wide measure of damages;

(xiii)   The operative time period during which Defendant engaged in conduct violative of the Sherman Act, the Florida Antitrust Act, the FDUTPA, the District of Columbia Antitrust Act, the CPPA, the Vermont Consumer Fraud Act, and/or other indirect purchaser state statutes; and

(xiv)    Whether the Class is entitled to injunctive relief, and, if so, the nature and extent thereof.

c.     Typicality – Fed. R. Civ. P. Rule 23(a)(3):  Plaintiffs' claims are typical of the claims of the Class since Plaintiffs purchased an Intel Compatible PC during the Class Period.  Plaintiffs and all members of the Class sustained monetary injury arising out of Defendant's wrongful conduct.  There are no

unique defenses that may be asserted against Plaintiffs, in their individual capacity.

d.     Adequacy – Fed. R. Civ. P. Rule 23(a)(4): Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the Class that they seek to represent; they have retained counsel competent and highly experienced in complex class action litigation; and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

e.     Superiority – Fed. R. Civ. P. Rule 23(b)(3): This class action is superior to other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for each member of the Class to obtain effective redress for the unlawful conduct committed by Defendant through the commencement of individual actions. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

f.     Fed. R. Civ. P. Rule 23(b)(2): Defendant's actions affected the Class as a whole, and Plaintiffs seek equitable relief for the benefit for the whole Class.

26. After determination of the predominate common issues identified above, if necessary or appropriate, the Class can be divided into logical and manageable subclasses.

27. Defendant has acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

28. In the absence of a class action, Defendant would be unjustly enriched because it would be able to retain the benefits and fruits of its wrongful conduct.

29. The claims in this case are also properly certifiable under the laws of the District of Columbia, the State of Vermont, the State of Florida, and of the other individual states that permit damage actions by indirect purchasers, including but not limited to the states identified above in paragraph 24(b)(iii).

**RELEVANT MARKET**

30. The relevant product market is x86 Microprocessors and similarly compatible microprocessors. The relevant geographic market is the world.

31. At all material times, Intel has had worldwide monopoly power in the x86 Microprocessor market. Sales of Intel microprocessors have accounted for approximately 80 percent of the total dollar sales of microprocessors worldwide.

**FACTUAL BACKGROUND**

**A.    Introduction**

32. Intel designs, develops, manufactures, markets, and sells a variety of semiconductor products, including microprocessors. Microprocessors are often described as the "brains" of a PC system, because they serve the essential functions of processing system data and controlling other devices integral to the system.

33. Intel has illegally maintained a monopoly on the x86 Microprocessor market through a variety of exclusionary practices that foreclose effective competition and market penetration by competitors such as AMD and others resulting in supra-competitive prices to the detriment of consumers such as the Plaintiffs and the Class. Intel's exclusionary practices include direct payments to Distributors and Retailers in return for exclusive or near-exclusive

11

supply arrangements; discriminatory rebates, discounts and subsidies to customers that foreclose competitors, including AMD, from gaining sufficient market share to compete effectively; and threats of economic retaliation against customers who deal with or support AMD.

34.    Intel's exclusionary practices are targeted at both U.S. and foreign customers. The purpose and effect of the illegal conduct is to maintain Intel's monopoly market share in the x86 Microprocessor market by preventing competitors from making significant gains in sales, output and market share worldwide and thereby further entrenching the consumer dependence on Intel's x86 Microprocessors for the overwhelming majority of their processor needs.

35.    Intel has obtained exclusive or near-exclusive supply arrangements with a number of large OEM PC manufacturers, including Dell, Sony, Toshiba, NEC, Fujitsu, Hitachi and Gateway. Pursuant to these arrangements, the OEMs purchase none or very little of their supply from AMD or other microprocessor manufacturers. Intel has secured these arrangements by means of direct payments, favorable discriminatory pricing, promotional support, and other financial incentives. In proceedings brought by the JFTC, Intel is not opposing the JFTC charges against it of misconduct with respect to Sony, Toshiba, NEC, Fujitsu and Hitachi.

36.    Intel has abused its monopoly power and maintained it by means of unlawful and anticompetitive exclusionary business practices that force Distributors and Retailers to limit severely or cancel or abandon altogether beneficial relationships with Intel's competitors, including AMD. This causes the price of x86 Microprocessors and of Intel Compatible PCs to remain at supra-competitive levels damaging consumers, including Plaintiffs and the Class.

B.    **Japanese Fair Trade Proceeding**

37.    On March 8, 2005, the JFTC ruled that Intel had violated Japan's antimonopoly laws. The JFTC complaint alleged that Intel had violated these laws by offering discounts to five Japanese PC vendors - Hitachi Ltd., Sony Corp., Fujitsu Ltd., Toshiba Corp., and NEC Corp. - on the condition that they either use Intel x86 Microprocessors exclusively, or limit the use of competitors' chips to 10%.

38.    Japanese regulators found that Intel violated Japanese antitrust laws beginning in 2002. In Japan, Intel's market share of x86 Microprocessors jumped from 78% in 2002 to 90% in 2004, while the shares of its competitors, AMD and Transmeta, dropped respectively from 18% in 2002 to 8% in 2004 and from 24% in 2002 to 11% in 2003. According to Japanese regulators, who believed Intel's sales methods to be unfair, the discount stipulations asserted by Intel on these OEMs severely limited their purchases from Intel's rivals. The JFTC discovered that in one case, Intel forced a PC maker to buy all of its semiconductors from it, under threat that otherwise it would lose the rebates that Intel had offered.

39.    Under the March 8, 2005 ruling, Intel can no longer require customers to use its chips exclusively or nearly exclusively across product cycles that typically span three or four months. Due to the ruling, OEMs will not be allowed to commit to exclusive use of Intel's microprocessors even of their own volition. Rather, Intel now must bid for each cycle. Intel is still able to utilize volume discounts as incentives to PC makers, but it cannot make the dissemination of a discount conditional on a promise of exclusivity by the purchaser. Although Intel accepted the Commission's recommendation, it did not purport to agree with the facts underlying the allegations.

**C.    Unlawful Practices Directed At Distributors**

40.    Intel utilizes many of the same anticompetitive tactics with Distributors as it does with OEMs. For example, Intel entered into an exclusive deal with Synnex, which is one of the largest U.S. based Distributors. Intel offered other Distributors a smorgasbord of programs, including but not limited to marketing bonuses, increased rebates, credit programs, payment for freight charges and special inventory assistance such as credits to offset inventory costs, if they agreed to carry only Intel x86 Microprocessors.

41.    Intel also provides discounts and rebates to Distributors on the condition that they cease to do business with Intel's competitors, such as AMD, on both a worldwide or strategic sub-market basis. For example, upon information and belief, in December 2004, Ingram Micro, Intel's biggest Distributor in China, unexpectedly ended discussions to distribute AMD

microprocessors because Intel provided loyalty rebates that were more lucrative than distributing AMD's microprocessors.

42.    Similar to their dealings with OEMs, Intel offers retroactive rebates when a Distributor reaches a prescribed buying quota.

43.    Intel's institution of exclusivity agreements, rebate programs and enforcing quotas is anticompetitive and unlawful behavior which leads to supra-competitive prices on Intel Compatible PCs, harming Plaintiffs and the Class.

E.    **Unlawful Practices Directed At Retailers**

44.    Approximately 20% of all desktop and notebook PCs are purchased at retail stores.

45.    Intel and other manufacturers of microprocessors face a two-step process to get their microprocessors on retail shelves:

      i.    First, they must convince one or more OEMs to build machines using their microprocessor at a suggested price point; and

      ii.    Second, they must convince the Retailer to stock and devote shelf space to these machines.

46.    In exchange for providing shelf space, Retailers demand market development funds ("MDF"). The MDF required to secure shelf space can run as high as $25 per box depending on the PC price point and how urgently the microprocessor manufacturer wants the shelf space. MDF also can consist of cooperative advertising support, but more frequently it is a marketing-related opportunity that a microprocessor manufacturer must buy for thousands of dollars. For example, it may include space in a Sunday circular, an in-store display or an internet training opportunity with the chain's sales staff.

47.    Intel has historically enjoyed an advantage over its competitors at retail because of many of the strategies described herein. Because of its influence and market power, Intel has greater access to the OEMs' price points and has the ability to exert pressure to keep its

competitors out of the OEMs' product plans.

48.    To leverage those advantages, Intel has also made exclusive deals with many key Retailers. For example, until recently Office Depot declined to stock AMD-powered notebooks regardless of the amount of MDF AMD offered, citing its "premier" status with Intel that would be put at risk. In another example, when Intel learned that Fry's, Fujitsu's only Retailer in the United States, was very successfully marketing a Fujitsu AMD Compatible PC, it offered Fry's a large payment to remove the product from its shelves.

49.    As soon as AMD made some progress in gaining retail market share[3], Intel instituted an exclusionary rebate program. Under this program, Intel provides full MDF payments to Retailers, such as Best Buy and Circuit City, only if they agree to limit to 20% not just the shelf space devoted to AMD based products, but also the share of revenues they generate from selling AMD platforms. If AMD's share exceeds 20%, the offending Retailer's marketing support from Intel is cut by 33% *across all products*.

50.    More specifically, if less than 20% of Circuit City's notebook computer revenue derives from AMD Compatible PCs (30% for desktops), Intel has agreed to pay Circuit City $15 in MDF per Intel Compatible PC sold; but if the AMD percentage reaches or exceeds 20%, Circuit City's MDF subsidy is cut to $10. This creates a $5 per box "tax" on the Retailer for doing 20% or more of its dollar volume in AMD Compatible PCs; and this "tax" is applicable retroactively to all of the Intel Compatible PCs that the Retailer buys, back to the very first machine.

51.    As with OEMs and Distributors, Intel's agreements and relationships with Retailers are unlawfully exclusionary, have no pro-competitive justification, and are intended to maintain its monopoly to the detriment of Plaintiffs and the Class.

---

[3] With regard to the desktop market during the fourth quarter of 2004, AMD Compatible PCs captured between a 33%-38% share of Circuit City's sales, despite being limited to five of the 25 models (20%) on the Circuit City shelves. And with approximately 15% of the shelf space allotted to its products at Best Buy and CompUSA, AMD PCs accounted for roughly 30% and 22% of their sales, respectively.

## FRAUDULENT CONCEALMENT

52.    Throughout the conspiracy, Defendant and its unnamed co-conspirators affirmatively and actively concealed their unlawful conduct from Plaintiffs and the Class. Defendant and its unnamed co-conspirators conducted their conspiracy in secret, concealed the true nature of their unlawful conduct and acts in furtherance thereof, and actively concealed their activities through various other means and methods to avoid detection. Plaintiffs did not discover, and could not have discovered through the exercise of reasonable diligence, that Defendant and its unnamed co-conspirators were violating the antitrust laws as alleged herein until AMD's action against Intel was commenced in June 2005.

53.    As a result of the active concealment of the conspiracy by Defendant and its co-conspirators, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

## FIRST CAUSE OF ACTION

### For Declaratory and Injunctive Relief Under Section 16 of The Clayton Act and 18 U.S.C. § 2201(a) For Violations of Section 1 of The Sherman Act (15 U.S.C. § 1) [The Sherman Act]

54.    Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

55.    Beginning at a time presently unknown to Plaintiffs, but at least as early as January 1, 1997, and continuing through at least the filing of this Complaint, Defendant and its co-conspirators entered into a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain, and/or stabilize prices in the x86 Microprocessor market.

56.    In formulating and carrying out the alleged agreement, understanding, and conspiracy, Defendant and its co-conspirators did those things that they combined and conspired to do, including but not limited to the acts, practices, and course of conduct set forth above, and the following, among others:

          A.     To fix, raise, maintain and/or stabilize the price of x86 Microprocessors;

          B.     To limit competition and exclude AMD's microprocessors from the marketplace by:

              i.    severely restricting or abolishing relationships with AMD;

              ii.   entering into exclusive or near-exclusive contracts to the detriment of AMD; and

              iii.  entering into exclusionary rebate programs to the detriment of AMD.

57.     The combination and conspiracy alleged herein has had the following effects, among others:

          A.     Price competition in the x86 Microprocessor market has been restrained, suppressed, and/or eliminated;

          B.     Prices for x86 Microprocessors sold by Defendant have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels worldwide; and

          C.     Those who purchased x86 Microprocessors directly and indirectly from Defendant have been deprived of the benefits of free and open competition.

58.     Plaintiffs have been injured and will continue to be injured in their business and property by paying more for x86 Microprocessors purchased indirectly from the Defendant and its co-conspirators than he would have paid in the absence of the combination and conspiracy, including paying more for personal computers and other products in which x86 Microprocessors a component as a result of higher prices paid for x86 Microprocessors by the OEMs.

59.     Plaintiffs and the Class continue to be injured by Defendant's continuing conduct in violation of Section 1 of the Sherman Act.

60.    Plaintiffs, on behalf of themselves and the members of the Class, request a declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 18 U.S.C. § 2201(a), that Defendant's aforementioned conduct violates Section 1 of the Sherman Act.

61.    Plaintiffs, on behalf of themselves and the members of the Class, also request that the Court enjoin and restrain Defendant's wrongful conduct, alleged herein, pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26.

## SECOND CAUSE OF ACTION

### For Declaratory and Injunctive Relief Under Section 16 of The Clayton Act and 18 U.S.C. § 2201(a) For Violations of Section 2 of The Sherman Act (15 U.S.C. § 2) [The Sherman Act]

62.    Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

63.    As described above, Defendant knowingly and willfully engaged in a course of unlawful and anticompetitive conduct to acquire and/or maintain its monopoly power in the x86 Microprocessor market.

64.    Through its wrongful course of conduct, Intel obtained, maintained, and continues to maintain, unlawful monopoly power, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

65.    Through such course of conduct, Intel exercised its monopoly power and caused anticompetitive effects, namely: suppression of the development of cheaper, faster, alternative microprocessors for personal and business PCs; and fixing, raising, maintaining and/or stabilizing the costs to the Plaintiffs and the Class of purchasing Intel Compatible PCs.

66.    Plaintiffs and the Class have been injured by Defendant's conduct in that they have paid supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs, and

have been denied the benefit of free and open competition in the development of innovative

microprocessor technology.

67.    Plaintiffs and the Class continue to be injured by Defendant's continuing conduct

in violation of Section 2 of the Sherman Act.

68.    Plaintiffs, on behalf of themselves and the members of the Class, request a

declaratory judgment, pursuant to Fed. R. Civ. P. 57 and 18 U.S.C. § 2201(a), that Defendant's

aforementioned conduct violates Section 2 of the Sherman Act.

69.    Plaintiffs, on behalf of themselves and the members of the Class, also request that

the Court enjoin and restrain Defendant's wrongful conduct, alleged herein, pursuant to Section

16 of the Clayton Act, 15 U.S.C. § 26.

### THIRD CAUSE OF ACTION

**Violation of D.C. Code, §28-4501 *et seq.***
**[D.C. Antitrust Act]**

70.    Plaintiffs re-allege and incorporate each and every allegation set forth in the

paragraphs above.

71.    Plaintiffs and members of the Class are "persons" within the meaning of the D.C.

Antitrust Act as defined in §28-4501.

72.    Intel possesses monopoly power in the market for x86 Microprocessors and Intel

Compatible PCs. Through the anticompetitive conduct described herein, Intel has successfully

acquired, maintained, and increased its monopoly power in the x86 Microprocessor market. Intel

has acted with an intent to illegally acquire and/or maintain its monopoly power, and its

anticompetitive conduct has enabled it do so, in violation of the D.C. Antitrust Act §48-4501, *et*

*seq.*

73.     As a result of this violation, Intel has charged artificially inflated prices for its microprocessors which have increased the price of Intel Compatible PCs over what PCs would have been absent Intel's conduct and Plaintiffs and the Class have been injured in their business and property in an amount that will be established at trial.

74.     Beginning on a date unknown to Plaintiffs, Defendant committed, and continues to commit, acts of unfair competition, within the meaning of Section 28-4501, *et seq.*, D.C. Antitrust Act, by engaging in the acts and practices specified in the paragraphs above. Defendant's conduct is substantially injurious to consumers and in violation of a legislatively-declared policy of this State. Consumers have paid, and continue to be forced to pay, supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs. This injury to consumers is not outweighed by any countervailing benefits to consumers or competition. Defendant has not articulated any legitimate reason for the conduct. Further, consumers could not reasonably have avoided the injury resulting from the conduct.

75.     The conduct alleged herein is a "restraint of trade" and/or a "monopolization" within the meaning of Section 28-4501, *et seq.*, D.C. Antitrust Act. The unlawful, unfair, and deceptive business practices of Defendant, as described above, have injured, and present a continuing threat of injury, to Plaintiffs, the Class, and members of the general public, in that Defendant's conduct has restrained and continues to restrain competition, and has caused and continues to cause payment of supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs.

76.     The acts and practices engaged in by Defendant and its unnamed co-conspirators, as described herein, constitute combinations that have the purpose and effect of:

    a.      Creating and carrying out restrictions in trade or commerce in the x86

            Microprocessor market as defined herein; and/or

    b.      Limiting competition in the manufacturing, making, sale, or purchase of

            microprocessors and AMD Compatible PCs.

77.      The aforesaid combination and conspiracy has had the following effects, among others:

    a.      Plaintiffs and the Class were injured in that they paid supracompetitive prices for

            Intel microprocessors, as these costs were passed through and incorporated in the

            prices Plaintiffs and the Class paid for OEM manufactured Intel Compatible PCs

            in the District of Columbia;

    b.      Plaintiffs and the Class were injured in that they were denied a competitive choice

            of microprocessors; and

    c.      Plaintiffs and the Class were, and are, denied the benefit of free and open

            competition.

78.      Plaintiffs and the Class seek actual and statutory damages, including treble damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by law, for their injuries caused by Intel.

## FOURTH CAUSE OF ACTION

### Violation of D.C. Code. §28-3901, *et seq.*
### [CPPA]

79.      Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

80.      Plaintiffs and members of the Class are "consumers" within the meaning of the CPPA as defined in §28-3901.

81.    Beginning on a date unknown to Plaintiffs, Defendant committed, and continues
to commit, acts of unfair competition, within the meaning of Section 28-3901 *et seq.*, CPPA, by
engaging in the acts and practices specified in the paragraphs above.  Defendant's conduct is
substantially injurious to consumers and in violation of a legislatively-declared policy of this
State.  Consumers have paid, and continue to be forced to pay, supra-competitive prices for x86
Microprocessors and for Intel Compatible PCs.  This injury to consumers is not outweighed by
any countervailing benefits to consumers or competition.  Defendant has not articulated any
legitimate reason for the conduct.  Further, consumers could not reasonably have avoided the
injury resulting from the conduct.

82.    The conduct described herein also constitutes fraudulent or deceptive practices
substantially affecting the conduct of trade or commerce in the District of Columbia in violation
of the CPPA.  Defendant's conduct was likely to and did deceive and mislead reasonable
consumers such as the Plaintiffs and the Class with respect to the pricing of x86 Microprocessors
and of Intel Compatible PCs in the District of Columbia.

83.    The conduct alleged herein is an "unlawful trade practice" within the meaning of
Section 28-3904, CPPA.  The unlawful, unfair, and deceptive business practices of Defendant, as
described above, have injured, and present a continuing threat of injury, to Plaintiffs, the Class,
and members of the general public, in that Defendant's conduct has restrained and continues to
restrain competition, and has caused and continues to cause payment of supra-competitive prices
for x86 Microprocessors and for Intel Compatible PCs.

84.    Plaintiffs and the Class seek actual and statutory damages, including treble
damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by
law, for their injuries caused by Intel.

## FIFTH CAUSE OF ACTION

### Violation of Fl. Stat., §§542.15, *et seq.*
### [Florida Antitrust Act]

85.    Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

86.    Plaintiffs and members of the Class are "persons" within the meaning of the Florida Antitrust Act as defined in §542.17.

87.    Intel possesses monopoly power in the market for x86 Microprocessors and Intel Compatible PCs. Through the anticompetitive conduct described herein, Intel has successfully acquired, maintained, and increased its monopoly power in the x86 Microprocessor market. Intel has acted with an intent to illegally acquire and/or maintain its monopoly power, and its anticompetitive conduct has enabled it do so, in violation of the Florida Antitrust Act §542.16, *et seq.*

88.    As a result of this violation, Intel has charged artificially inflated prices for its microprocessors which have increased the price of Intel Compatible PCs over what PCs would have been absent Intel's conduct and Plaintiffs and the Class have been injured in their business and property in an amount that will be established at trial.

89.    Beginning on a date unknown to Plaintiffs, Defendant committed, and continues to commit, acts of unfair competition, within the meaning of Section 542.16, *et seq.*, Florida Antitrust Act, by engaging in the acts and practices specified in the paragraphs above. Defendant's conduct is substantially injurious to consumers and in violation of a legislatively-declared policy of this State. Consumers have paid, and continue to be forced to pay, supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs. This injury to consumers is not outweighed by any countervailing benefits to consumers or competition.

Defendant has not articulated any legitimate reason for the conduct. Further, consumers could not reasonably have avoided the injury resulting from the conduct.

90.    The conduct alleged herein is an "restraint of trade" and/or an "monopolization" within the meaning of Section 542.16 *et seq.*, Florida Antitrust Act. The unlawful, unfair, and deceptive business practices of Defendant, as described above, have injured, and present a continuing threat of injury, to Plaintiffs, the Class, and members of the general public, in that Defendant's conduct has restrained and continues to restrain competition, and has caused and continues to cause payment of supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs.

91.    The acts and practices engaged in by Defendant and its unnamed co-conspirators, as described herein, constitute combinations that have the purpose and effect of:

a.    Creating and carrying out restrictions in trade or commerce in the x86 Microprocessor market as defined herein; and/or

b.    Limiting competition in the manufacturing, making, sale, or purchase of microprocessors and AMD Compatible PCs.

92.    The aforesaid combination and conspiracy has had the following effects, among others:

a.    Plaintiffs and the Class were injured in that they paid supracompetitive prices for Intel microprocessors, as these costs were passed through and incorporated in the prices Plaintiffs and the Class paid for OEM manufactured Intel Compatible PCs in Florida;

b.    Plaintiffs and the Class were injured in that they were denied a competitive choice of microprocessors; and

c.     Plaintiffs and the Class were, and are, denied the benefit of free and open

competition.

93.     Plaintiffs and the Class seek actual and statutory damages, including treble

damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by

law, for their injuries caused by Intel.

## SIXTH CAUSE OF ACTION

### Violation of Fl. Stat. §501.201, *et seq.*
### [Florida Deceptive and Unfair Trade Practices Act]

94.     Plaintiffs re-allege and incorporate each and every allegation set forth in the

paragraphs above.

95.     Plaintiffs and members of the Class are "consumers" within the meaning of the

FDUTPA as defined in §501.203.

96.     Beginning on a date unknown to Plaintiffs, Defendant committed, and continues

to commit, acts of unfair competition, within the meaning of Section 501.201 *et seq.*, FDUTPA,

by engaging in the acts and practices specified in the paragraphs above. Defendant's conduct is

substantially injurious to consumers and in violation of a legislatively-declared policy of this

State. Consumers have paid, and continue to be forced to pay, supra-competitive prices for x86

Microprocessors and for Intel Compatible PCs. This injury to consumers is not outweighed by

any countervailing benefits to consumers or competition. Defendant has not articulated any

legitimate reason for the conduct. Further, consumers could not reasonably have avoided the

injury resulting from the conduct.

97.     The conduct described herein also constitutes fraudulent or deceptive practices

substantially affecting the conduct of trade or commerce in the State of Florida in violation of the

FDUTPA. Defendant's conduct was likely to and did deceive and mislead reasonable consumers

such as the Plaintiffs and the Class with respect to the pricing of x86 Microprocessors and of Intel Compatible PCs in Florida.

98.     The conduct alleged herein is an "unfair method of competition" and/or an "unfair or deceptive act or practice" within the meaning of Section 501.201 *et seq.*, FDUTPA. The unlawful, unfair, and deceptive business practices of Defendant, as described above, have injured, and present a continuing threat of injury, to Plaintiffs, the Class, and members of the general public, in that Defendant's conduct has restrained and continues to restrain competition, and has caused and continues to cause payment of supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs.

99.     Plaintiffs and the Class seek actual and statutory damages, including treble damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by law, for their injuries caused by Intel.

## SEVENTH CAUSE OF ACTION

### Violation of Vt. Stat. Ann. Tit. 9, §§2451-2480g
### [Vermont Consumer Fraud Act]

100.    Plaintiffs re-allege and incorporate each and every allegation set forth in the paragraphs above.

101.    Plaintiffs and members of the Class are "consumers" within the meaning of the Vermont Consumer Fraud Act as defined in §2451a.

102.    Intel possesses monopoly power in the market for x86 Microprocessors and Intel Compatible PCs. Through the anticompetitive conduct described herein, Intel has successfully acquired, maintained, and increased its monopoly power in the x86 Microprocessor market. Intel has acted with an intent to illegally acquire and/or maintain its monopoly power, and its

anticompetitive conduct has enabled it do so, in violation of the Vermont Consumer Fraud Act §
2451-2480g.

103.    As a result of this violation, Intel has charged artificially inflated prices for its
microprocessors which have increased the price of Intel Compatible PCs over what PCs would
have been absent Intel's conduct and Plaintiffs and the Class have been injured in their business
and property in an amount that will be established at trial.

104.    Beginning on a date unknown to Plaintiffs, Defendant committed, and continues
to commit, acts of unfair competition, within the meaning of Section 2451 *et seq.*, Vermont
Consumer Fraud Act, by engaging in the acts and practices specified in the paragraphs above.
Defendant's conduct is substantially injurious to consumers and in violation of a legislatively-
declared policy of this State. Consumers have paid, and continue to be forced to pay, supra-
competitive prices for x86 Microprocessors and for Intel Compatible PCs. This injury to
consumers is not outweighed by any countervailing benefits to consumers or competition.
Defendant has not articulated any legitimate reason for the conduct. Further, consumers could
not reasonably have avoided the injury resulting from the conduct.

105.    The conduct described herein also constitutes fraudulent or deceptive practices
substantially affecting the conduct of trade or commerce in the State of Vermont in violation of
the Vermont Consumer Fraud Act. Defendant's conduct was likely to and did deceive and
mislead reasonable consumers such as the Plaintiffs and the Class with respect to the pricing of
x86 Microprocessors and of Intel Compatible PCs in Vermont.

106.    The conduct alleged herein is an "unfair method of competition" and/or an "unfair
or deceptive act or practice" within the meaning of Section 2451 *et seq.*, Vermont Consumer
Fraud Act. The unlawful, unfair, and deceptive business practices of Defendant, as described

above, have injured, and present a continuing threat of injury, to Plaintiffs, the Class, and members of the general public, in that Defendant's conduct has restrained and continues to restrain competition, and has caused and continues to cause payment of supra-competitive prices for x86 Microprocessors and for Intel Compatible PCs.

107.    The acts and practices engaged in by Defendant and its unnamed co-conspirators, as described herein, constitute combinations that have the purpose and effect of:

    a.    Creating and carrying out restrictions in trade or commerce in the x86 Microprocessor market as defined herein; and/or

    b.    Limiting competition in the manufacturing, making, sale, or purchase of microprocessors and AMD Compatible PCs.

108.    The aforesaid combination and conspiracy has had the following effects, among others:

    a.    Plaintiffs and the Class were injured in that they paid supracompetitive prices for Intel microprocessors, as these costs were passed through and incorporated in the prices Plaintiffs and the Class paid for OEM manufactured Intel Compatible PCs in Vermont;

    b.    Plaintiffs and the Class were injured in that they were denied a competitive choice of microprocessors; and

    c.    Plaintiffs and the Class were, and are, denied the benefit of free and open competition.

109.    Plaintiffs and the Class seek actual and statutory damages, including treble damages, and attorneys' fees and costs, as well as injunctive and equitable relief permitted by law, for their injuries caused by Intel.

## EIGHTH CAUSE OF ACTION

### [Violations of State Antitrust Statutes]

110.    Plaintiffs re-allege and incorporate, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

111.    By reason of the foregoing, Defendant has violated Arizona Revised Statutes § 44-1304, *et seq.*

112.    By reason of the foregoing, Defendant has violated California Bus. & Prof. Code §16700, *et seq.*

113.    By reason of the foregoing, Defendant has violated Iowa Code § 553.5.

114.    By reason of the foregoing, Defendant has violated Kansas Stat. Ann. § 50-101 *et seq.*

115.    By reason of the foregoing, Defendant has violated Maine Rev. Stat. Ann. 10, § 1101 *et seq.*

116.    By reason of the foregoing, Defendant has violated Michigan Comp. Laws. Ann § 445.773 *et seq.*

117.    By reason of the foregoing, Defendant has violated Minnesota Stat. § 325D.52 *et seq.*

118.    By reason of the foregoing, Defendant has violated Mississippi Code Ann. § 75-21-1 *et seq.*

119.    By reason of the foregoing, Defendant has violated Nebraska Rev. Stat. § 59.801 *et seq.*

120.    By reason of the foregoing, Defendant has violated Nevada Rev. Stat. Ann. § 598A *et seq.*

121.  By reason of the foregoing, Defendant has violated New Mexico Stat. Ann. § 57-1-1 *et seq.*

122.  By reason of the foregoing, Defendant has violated New York Gen. Bus. Law § 340, 349 *et seq.*

123.  By reason of the foregoing, Defendant has violated North Carolina Gen. Stat. § 75-1 *et seq.*

124.  By reason of the foregoing, Defendant has violated North Dakota Cent. Code § 51-08.1-01 *et seq.*

125.  By reason of the foregoing, Defendant has violated South Dakota Codified Laws Ann. § 37-1 *et seq.*

126.  By reason of the foregoing, Defendant has violated Tennessee Code Ann. § 47-25-101 *et seq.*

127.  By reason of the foregoing, Defendant has violated West Virginia § 47-18-1 *et seq.*

128.  By reason of the foregoing, Defendant has violated Wisconsin Stat. § 133.01 *et seq.*

129.  Class members in each of the states listed above paid supra-competitive prices for x86 Microprocessors and as a result have been injured because Defendant's wrongful and monopolistic conduct.

130.  The statute of limitations in the state actions listed above are tolled under the doctrine of equitable tolling since the AMD Complaint was not filed until June 27, 2005.

131.  Plaintiffs and the Class are entitled to bring the state actions listed above and to recover herein compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

## NINTH CAUSE OF ACTION

### [Violations of State Consumer Protection Statutes]

132.    Plaintiffs incorporate and re-allege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

133.    By reason of the foregoing, Defendant has violated Alaska Statutes § 45.50.471, *et seq.*

134.    By reason of the foregoing, Defendant has violated Arkansas Code § 4-88-101, *et seq.*

135.    By reason of the foregoing, Defendant has violated California Bus. & Prof. Code § 17200, *et seq.*

136.    By reason of the foregoing, Defendant has violated Idaho Code § 48-601, *et seq.*

137.    By reason of the foregoing, Defendant has violated Maine Revised Statutes, Title 5, § 207, *et seq.*

138.    By reason of the foregoing, Defendant has violated Montana Code § 30-14-101, *et seq.*

139.    By reason of the foregoing, Defendant has violated Nebraska Revised Statutes § 59-1601, *et seq.*

140.    By reason of the foregoing, Defendant has violated Nevada Revised Statutes § 598.0903, *et seq.*

141.    By reason of the foregoing, Defendant has violated New Hampshire Revised Statutes § 358-A:1, *et seq.*

142.    By reason of the foregoing, Defendant has violated New Mexico Statutes § 57-12-1, *et seq.*

143.    By reason of the foregoing, Defendant has violated North Carolina General Statutes § 75-1.1, *et seq.*

144.    By reason of the foregoing, Defendant has violated Utah Code § 13-11-1, *et seq.*

145.    By reason of the foregoing, Defendant has violated West Virginia Code § 46A-6-101, *et seq.*

146.    Class members in each of the states listed above paid supra-competitive prices for x86 Microprocessors and as a result have been injured because Defendant's wrongful and monopolistic conduct.

147.    The statute of limitations in the states listed above are tolled under the doctrine of equitable tolling since the AMD Complaint was not filed until June 27, 2005.

148.    Plaintiffs and the Class are entitled to bring actions under the state statutes listed above and to recover compensatory damages, punitive damages, reasonable attorneys' fees, and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter an Order setting forth the following:

a)  certifying the Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, certifying Plaintiffs as the representatives of the Class, and designating their counsel as counsel for the Class;

b)  declaring that Defendant's conduct constitutes a combination and conspiracy to restrain trade in violation of Section 1 of the Sherman Act;

c)  declaring that Defendant's conduct constitutes monopolization and/or attempted monopolization in violation of Section 2 of the Sherman Act;

d) enjoining and restraining Defendant's continuing violations of Section 1 and 2 of the Sherman Act, pursuant to Section 16 of the Clayton Act;

e) declaring that Defendant's conduct constitutes anticompetitive practices in violation of Section 28-4501 *et seq.,* D.C. Antitrust Act;

f) declaring that Defendant's conduct is in violation of Section 28-3901, *et seq.*, CPPA;

g) declaring that Defendant's conduct constitutes anticompetitive practices in violation of Section 542.19 *et seq.,* Florida Antitrust Act;

h) declaring that Defendant's conduct is in violation of Section 501.201, *et seq.*, FDUTPA;

i) declaring that Defendant's conduct constitutes anticompetitive practices in violation of Section 2451 *et seq.*, Vermont Consumer Fraud Act;

j) declaring that Defendant's conduct constitutes unfair business practices in violation of Section 2451 *et seq.*, Vermont Consumer Fraud Act;

k) declaring that Defendant's conduct is in violation of antitrust and/or consumer protection or deceptive practice statutes in the indirect purchaser states;

l) granting Plaintiffs and the Class damages as permitted by law;

m) granting Plaintiffs and the Class their costs of prosecuting this action, together with interest and attorneys' fees, including such as allowed by statute, experts' fees and costs; and

n) granting such other relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and the members of the Class, hereby demands trial by jury on all issues so triable, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

CHIMICLES & TIKELLIS LLP

Dated: July 22, 2005

Pamela Tikellis (#2172)
Robert J. Kriner, Jr. (#2546)
A. Zachary Naylor (#4439)
One Rodney Square
P.O. Box 1035
Wilmington, DE 19999
Telephone: (302) 656-2500
Fascimile: (302) 656-9053

Douglas G. Thompson, Jr.
Richard M. Volin
Karen J. Marcus
FINKELSTEIN, THOMPSON &
LOUGHRAN
1050 30th Street, NW
Washington, DC 20007
Telephone:  (202) 337-8000
Facsimile:   (202) 337-8090

Jonathan L. Alpert, Esq.
Fla. Bar # 121970
5920 River Terrace
Tampa, Fl 33604-6526
Telephone:  (813) 223-4131
Facsimile: (813) 228-9612
Mobile: (813) 230-9915
Email: JonAlpert@aol.com

Arthur Salzberg
Arthur J. Salzberg & Associates, P.C.
Air Rights Center North Tower
4550 Montgomery Avenue Ste 601N
Bethesda, Md. 20814-3202
Telephone: (301) 913 0222
Facsimile: (301) 913 0246

Counsel for Plaintiffs

34